**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

United States of America

    v.                              Crim. No. 10-cr-085-01-SM

Beatrice Munyenyezi

**ORDER OF DETENTION PENDING TRIAL**

In accordance with Section 3142(f) of the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., a hearing was conducted on June 24, 2010, for the purpose of determining whether to detain the defendant, Beatrice Munyenyezi, who has been indicted on two counts of Procurement of Citizenship or Naturalization Unlawfully in violation of 18 U.S.C. § 1425(a) & (b) and a request that her citizenship be revoked pursuant to 8 U.S.C. § 1451(e).

Under 18 U.S.C. § 3142(b), a court, in making a determination regarding detention, must evaluate the risk of the defendant's flight, the risk to the safety of any other person, and the risk to the safety of the community. In circumstances in which detention is not ordered, the court is nonetheless empowered to impose conditions on release. 18 U.S.C. § 3142(c).

Pursuant to the provisions of 18 U.S.C. § 3142(g) a court, in assessing the risks noted in 18 U.S.C. § 3142(b), shall consider the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt; (3) the history and characteristics of the accused, including family ties, past history, financial resources and employment; and (4) the nature and seriousness of the danger to any person or the community that would be posed by a release.

During the course of a hearing conducted pursuant to 18 U.S.C. § 3142, the government typically retains the burden of persuading the court that "'no condition or combination of conditions will reasonably assure' the defendant's presence at trial." United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988)(quoting United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987)); United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991). For its part, the government is required to offer a preponderance of the evidence to establish "risk of flight." See Patriarca, 948 F.2d at 792-93. Facts necessary to find that no combination will reasonably assure the safety of any person and the community require satisfaction of a "clear and convincing" standard of proof. 18 U.S.C. § 3142(f)(2).

In this case, the indictment itself establishes probable cause to believe that the offenses charged have been committed and that the defendant has committed them. For the reasons stated below, I find that the government has met its burden to establish that the defendant presents a risk of flight and that no conditions can reasonably assure the safety of the community.

While the charging document speaks for itself, in summary the defendant has been charged with knowingly providing false and fraudulent information as to material facts in various applications and forms in order to obtain naturalization and citizenship in the United States. Again, in general terms, the alleged false and fraudulent information involves her failure to disclose (1) her membership and support of the Mouvement Republicain National pour le Developpement ("MRND") Party and the Interahamwe (youth militia made up of MRND members and extremist Hutus), and (2) the defendant's active participation in the oppression and murder of persons (mostly Tutsis)in Rawanda, Africa, between April and July of 1994 (during which time an estimated 500,000 – 800,000 persons were murdered in what has been referred to as the "Rwandan genocide"). As to the latter allegation, the government proffered that seven (7) witnesses, some of whom identified the defendant by name after viewing a

photograph, have outlined in detail the defendant's role in the Rwandan genocide in the area of Butare, Rwanda.  Those allegations range from speaking at public meetings and rallies of the MRND and Interahamwe, to providing supplies and support to those oppressing and murdering Tutsis, to identifying persons to be gang raped and/or killed and instructing MRND and Interahamwe members to carry out her directives, to personally killing at least one Tutsis herself.  It is also worth noting that the defendant's husband, Arsene Shalom Ntahobari and his mother, Pauline Nyiramasuhuko (a cabinet minister in the MRND government), are both represented to be defending genocide charges at the International Criminal Tribunal for Rwanda.  Her sister, Prudence Kantengwa, is currently facing charges in the District of Massachusetts that are similar to those presented here against this defendant, although her role in the Rwandan genocide was described by the government was much less prominent and violent in nature.

   As stated previously, in making a determination as to risk of flight and danger to the community, the court must consider the factors set forth in 18 U.S.C. § 3142(g).  The "weight of the evidence" to support the government's case as proffered at the detention hearing was strong and compelling.  While the "nature

of the crime charged," unlawfully procuring naturalization or citizenship, is not itself a violent offense, the factual predicate to establish the government's case (i.e. the defendant was herself a genocidist and/or aided and abetted the same) involves heinous conduct that is incomprehensible and unspeakable in its brutality.  While certainly less significant, the offenses charged also reflect crimes of dishonesty and lying under oath in order to obtain naturalization, citizenship, a visa and passport; additional facts that support the government's request for detention.  Although the defendant has no "criminal record" during her years in the United States, the alleged involvement in the Rwandan genocide also is relevant and controlling on the factors of "character" and "past conduct."  In many respects, if the witness proffers by the government are believed, the defendant's spotless criminal record while in the United States is effectively meaningless; while certainly not the sole basis for the court's finding that the defendant presents a danger to the community, it is arguable that a person capable of the atrocities outlined by those witnesses <u>ipso facto</u> continues to present a danger to the community sixteen years later.

   In determining risk of flight, the court also must consider the potential repercussions of a conviction in this case.  In

order to obtain a conviction based its charging theory, the government must prove the defendant's role in the Rwandan genocide. If that role is established and the defendant is convicted here, the defendant's citizenship will be revoked and it would appear likely that she would be deported and extradited for trial in Rwanda or some other tribunal for alleged genocidal acts. The government has represented that the penalty for a conviction in Rwanda for such acts is life in prison. Thus, the serious potential repercussions for the defendant if convicted here provide a realistic motive for the defendant to flee to avoid those potential repercussions. To a lesser extent, the duration of a potential sentence on the crime charged here--as well as the potential revocation of her citizenship--similarly provide the defendant with a motive to flee. Finally, in considering "family and community ties," while the defendant and her children have been located in New Hampshire since 1999, the court notes the defendant has significant ties to Rwanda providing her with a relocation venue and potential assistance should she attempt to flee.

    For all of these reasons, and for the reasons more fully stated on the record, the court finds that the government has met its burden of establishing by a preponderance of the evidence

that the defendant presents a flight risk and by clear and convincing evidence that the defendant presents a danger to the community.  In making these findings, the court notes that it understands the defendant is not on trial in this case for her role in the Rwandan genocide.  As stated above, however, that alleged conduct will certainly be the factual predicate to the government's charging theory that the defendant provided false and fraudulent information in order to obtain naturalization and citizenship.  Moreover, those alleged acts, corroborated on proffer by at least seven (7) witnesses, are most certainly relevant to the court's determination as to whether this defendant presents a risk of flight or danger to the community.

Accordingly, it is **ORDERED** that the defendant be detained pending trial.

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the

corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED.**

/s/ Daniel J. Lynch
Daniel J. Lynch
United States Magistrate Judge

Date: June 25, 2010

cc:  Aloke S. Chakravarty, AUSA
     Jeffrey Auerhahn, AUSA
     David W. Ruoff, Esq.
     U.S. Marshal
     U.S. Probation